UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY B. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PETE BUTTIGIEG, SECRETARY OF TRANSPORTATION,<br><br>　　　　Defendant. | Case No. 22-cv-00512-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 21 |

Plaintiff Timothy B. Johnson filed a first amended complaint ("FAC") against Pete Buttigieg, Secretary of Transportation, United States Department of Transportation ("DOT") alleging claims for employment discrimination, harassment, and retaliation under federal law. Defendant now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims. [Docket No. 21.] The court held a hearing on December 8, 2022. For the following reasons, the motion is granted.

I.  **BACKGROUND**

　　A.  **Allegations in the FAC**

Johnson is an African American man with Type-2 Diabetes Mellitus, which he alleges is a disability under federal regulations. He worked as an Air Traffic Manager ("ATM") at the Livermore Air Traffic Control Tower and was employed by the Federal Aviation Administration ("FAA"), an agency of the DOT. [Docket No. 20 (FAC) ¶¶ 5, 16, 17.] Starting in March 2020, Johnson began working under the "FAA-approved emergency telework agreement." He alleges that as a diabetic, he faced a higher risk of experiencing serious complications from COVID-19 and that his diabetes "fell under the CDC definition as a 'High Risk Category[.]'" *Id.* at ¶ 18. Johnson alleges that certain "racial and ethnic minority groups, including non-Hispanic Black

persons, have higher rates of hospitalization or death from COVID-19 than among non-Hispanic white persons," and that "African-American adults are sixty percent . . . more likely than Non-Hispanic white adults to be diagnosed with diabetes . . ." *Id*. at ¶ 21.

On June 9, 2020, the FAA discontinued telework duties for ATMs in his district. As a result, Johnson was required to return to work even though his disability placed him "most-at-risk of contracting COVID-19." *Id*. at ¶ 19. On June 10, 2020, Johnson submitted a written request to continue teleworking as an accommodation on the ground that he faced a higher risk of experiencing serious illness if he contracted COVID-19 than others without diabetes. His request for this accommodation was denied. *Id*. at ¶ 20, 21. Johnson alleges that DOT representatives "failed to follow the reasonable accommodation procedures set forth by [DOT's] policies and failed to provide reasonable accommodation or engage in a good faith interactive process to see if reasonable accommodations could be attained." Instead, he alleges, they "offered only token alternative accommodations" of partial remote work or an alternative hour schedule which still required Johnson to work in person at the Livermore Air Traffic Control Tower. *Id*. at ¶¶ 23, 24. Given Johnson's disability and "the disproportionate effects of COVID-19" on African Americans, Johnson alleges that these "token accommodations were unreasonable" because they placed him at serious risk of contracting COVID-19. *Id*. at ¶ 24. Additionally, even though Johnson's supervisor claimed that he was required to be present at work to perform his job duties, *id*. at ¶ 28, Johnson alleges that ATMs did not need to be present and on location for many tasks and that his duties had been successfully performed remotely from March 2020 through June 2020. *Id*. at ¶¶ 29-34.

Due to the denial of his request for accommodation, Johnson alleges that he was "forced to return to the Livermore Tower to resume in-person work and risk serious illness," which left him "with no choice but to seek early retirement." His early retirement, which he alleges was a "discriminatory constructive termination" based on disability and race, was effective on June 30, 2021. *Id*. at ¶¶ 26, 27. Johnson further alleges that he was forced to use all of his accrued sick and holiday leave until it was exhausted, and that "[o]ther employees who remained on telework duty did not have to use their sick or holiday pay." *Id*. at ¶ 27. Finally, Johnson alleges that he

2

requested "Weather and Safety Leave," which had been made available to others, including employees in "mission critical" positions and "individuals categorized by the CDC as high-risk individuals," but that Defendant denied this request. *Id.* at ¶ 35.

### B. Procedural History

Johnson filed the complaint on January 26, 2022, bringing one claim under the Rehabilitation Act, three claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), four claims under 42 U.S.C. § 1981, five claims under California's Fair Employment and Housing Act ("FEHA"), and one claim under the California Labor Code. Defendant moved pursuant to Rule 12(b)(1) to dismiss the Section 1981 and state law claims. He also moved pursuant to Rule 12(b)(6) to dismiss the Title VII claims as insufficiently pleaded. Defendant did not challenge Johnson's Rehabilitation Act claim. On August 11, 2022, the court granted the motion. The court dismissed the Title VII claims with leave to amend and dismissed the Section 1981 claims with leave to amend to plead those claims under Title VII and/or the Rehabilitation Act. Johnson's state law claims were dismissed with prejudice, and he was ordered to file an amended complaint by September 1, 2022 and to "plead his best case." [Docket No. 19 (Minute Order).]

Johnson timely filed the FAC, which asserts the following claims for relief: 1) disability discrimination in violation of the Rehabilitation Act; 2) retaliation in violation of the Rehabilitation Act; 3) constructive discharge in violation of the Rehabilitation Act; 4) hostile work environment based on race in violation of Title VII; 5) race discrimination (disparate treatment) in violation of Title VII; 6) race discrimination in violation of Title VII; 7) retaliatory hostile work environment in violation of Title VII; and 8) constructive discharge in violation of Title VII.

Defendant now moves pursuant to Rule 12(b)(6) to partially dismiss the first claim and moves to dismiss claims two through eight in their entirety.[1]

---

[1] Defendant notes the FAC's allegations that Johnson timely filed charges of discrimination with the Equal Employment Opportunity Commission and "complied with all administrative prerequisites to bring this lawsuit," FAC ¶¶ 13, 14, and argues that these are "fact-less conclusion[s]." Mot. 3. On reply, Defendant clarifies that he did not move to dismiss the FAC based on failure to exhaust administrative remedies but reserves the right to assert that defense. Reply 1 n.1.

3

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

The court will address the claims in the order they appear in Defendant's motion.

### A. Disability Discrimination under the Rehabilitation Act

Claim one is for "disability discrimination" under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which provides the exclusive remedy for federal employees alleging disability discrimination. *See Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir.1989), *overruled on other grounds by Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89 (1990).[2] Defendant moves for partial dismissal on the ground that Johnson does not specify whether he alleges discrimination based on

---

[2] The FAC alleges that Defendant's conduct also violates section 504 of the Rehabilitation Act, 29 U.S.C. § 794, FAC ¶ 57, but "no private cause of action exists for a federal employee against a federal employer under § 794." *Johnston*, 875 F.2d at 1418. Accordingly, to the extent the FAC seeks to bring a claim under section 504, it is dismissed with prejudice.

4

disparate treatment and/or a failure to accommodate. To the extent Johnson alleges disability discrimination pursuant to a theory of disparate treatment, Defendant moves to dismiss the claim as insufficiently pleaded. Mot. 5. Defendant does not seek dismissal of the failure to accommodate claim. *See id*. at 5-6.

In response, Johnson argues that Defendant did not move to dismiss his original claim for disability discrimination under the Rehabilitation Act and contends that the court has already held that the claim "survived the Defendant's motion [to dismiss the complaint] without change." According to Johnson, Defendant is attempting to "litigate an issue that had already been resolved." Opp'n 8. Not so. Defendant did not move to dismiss Johnson's Rehabilitation Act claim as alleged in the original complaint and the court did not rule on the sufficiency of any claim under that statute. Nothing in the court's ruling on the motion to dismiss precludes Defendant from challenging this or any other claim in the FAC.

Johnson next argues that "there is no reason why [he] cannot allege both" a claim for disparate treatment and a claim for failure to accommodate and asserts that "the FAC contains facts sufficient to seek relief under both theories." Opp'n 8-9.

In order to state a disability discrimination claim based on disparate treatment under the Rehabilitation Act, a plaintiff must allege that "(1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv*., 492 F.3d 998, 1005 (9th Cir. 2007). For purposes of the Rehabilitation Act, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." *Id*. (citing 42 U.S.C. § 12102(2)). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Bates v. United Parcel Serv.*, 511 F.3d 974, 989 (9th Cir. 2007) (emphasis removed) (quoting 42 U.S.C. § 12111(8)); *see Walton*, 492 F.3d at 1005 (noting that "the standards of substantive liability" from the Americans with Disabilities Act are incorporated in the Rehabilitation Act).

Here, Defendant does not dispute that the FAC adequately alleges that Johnson is a person with a disability and that he is qualified to perform the essential functions of his job with or without accommodation. *See* FAC ¶¶ 16, 40. At issue is the third element, which requires Johnson to establish that Defendant discriminated against him *because of* his disability. Johnson alleges that he "suffered the adverse employment actions of unlawful harassment, discrimination, failure to accommodate, failure to investigate, remedy, and/or prevent discrimination, failure to reinstate and/or return to work, and constructive termination," and that his disability, "real and perceived, were motivating reasons and/or factors in the decisions to subject" him to these actions. FAC ¶¶ 55, 56. These allegations are entirely conclusory; the FAC is devoid of anything to support a reasonable inference that Johnson's disability itself was a factor in Defendant's actions. Other paragraphs in the FAC cited by Johnson merely repeat the conclusory allegations that Defendant took certain actions "[b]ecause of [Johnson's] disability" and that his disability "substantially motivated" his "constructive termination." *See*, e.g., FAC ¶¶ 25, 41. These statements are insufficient to plausibly allege that Defendant discriminated against Johnson because of his disability. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the FAC fails to state a disability discrimination claim based on disparate treatment under the Rehabilitation Act.

### B. Retaliation under the Rehabilitation Act

Claim two is for retaliation. Courts apply the same standard when analyzing retaliation claims under the Rehabilitation Act and Title VII. *Scott v. Mabus*, 618 F. App'x 897, 901 (9th Cir. 2015) (citing *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879 887 (9th Cir. 2004)). To state a retaliation claim, Johnson must allege that he 1) engaged in a protected activity, 2) Defendant subjected him to an adverse employment action, and 3) there is a causal link between the protected activity and the adverse employment action. *Brown v. Brennan*, No. 19-CV-05797-JSC, 2021 WL 1164765, at *2 (N.D. Cal. Mar. 26, 2021) (quoting *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003)).

The FAC alleges that Johnson "engaged in protected activity by making numerous complaints . . . about Defendant's employment practices that required" him "to be present at his

workplace despite federal mandates declaring COVID-19 as a pandemic" and informing Defendant that he has diabetes and is at higher risk of serious complications from COVID-19. However, "on June 9, 2020, Defendant required [Johnson] to return to work despite his disability and the ongoing COVID-19 pandemic." FAC ¶ 64. It further alleges that Johnson believed that the requirement that he return to work "was in violation of his protected status as a person with a disability and was unlawful" and that starting on June 10, 2020, he sent emails and correspondence to his supervisors requesting an accommodation for his disability but received no response. *Id*. at ¶ 65. Johnson further alleges that Defendant's failure to process his request for an accommodation violated the Rehabilitation act and that he filed an EEO complaint on that ground. "As a result of [Johnson's] complaints," Defendant constructively terminated his employment. *Id*. at ¶ 66.

Defendant argues that the FAC fails to state a retaliation claim because it does not adequately allege any of the three elements of the claim. Mot. 6. As to the first one, Johnson argues that he engaged in protected activity by making "multiple requests to seek reasonable accommodation and [refusing] to return to work." Opp'n 10. Johnson has adequately pleaded the first element. *See, e.g., Coons*, 383 F.3d at 887 (holding that plaintiff "was engaged in a protected activity [under the Rehabilitation Act] when he requested that the IRS make reasonable accommodations for his alleged disability.").

With respect to the second element, which requires Plaintiff to plead an adverse action taken by Defendant against him, Johnson points to allegations that he was forced to use his accrued sick and holiday leave until it was exhausted in order to stay at home and that he was eventually constructively discharged because he refused to resume in-person work. *Id*. (citing FAC ¶¶ 26, 27, 37, 42). This, too, is adequately pleaded.

Johnson's brief does not specifically address the third element, which requires him to allege facts supporting a causal link between the protected activity and the adverse action. Instead, he identifies the allegations that he has diabetes, is in a "High Risk Category" due to the heightened risk COVID-19 poses to individuals with diabetes and worked remotely under an emergency telework agreement. Opp'n 10 (citing FAC ¶¶ 16, 18). As his counsel confirmed at

the hearing, Johnson's retaliation claim is that he asked for the accommodation of remote work in order to avoid returning in-person given his disability and the risks associated with contracting COVID-19, and Defendant denied it in retaliation for making the request. This resulted in Johnson having to use his accrued leave in order to stay home and eventually forced him to retire. Johnson does not allege facts from which the court can plausibly infer that there was a causal link between Johnson's requests for an accommodation of his disability and the adverse actions. In other words, the FAC does not adequately allege that Defendant took actions against Johnson in retaliation for his engaging in the protected activity of requesting accommodation. *See Coons*, 383 F.3d at 887-88 (affirming grant of summary judgment on Rehabilitation Act retaliation claim for failure to "make out a prima facie case of retaliation" where plaintiff did not establish a causal connection between request for accommodations and subsequent demotion). Accordingly, Defendant's motion to dismiss the Rehabilitation Act retaliation claim is granted.

### C. Hostile Work Environment

Claim four is for hostile work environment based on race in violation of Title VII. Claim seven is for retaliatory hostile work environment in violation of Title VII.

In order to state a claim for hostile work environment based on race, Johnson must allege that (1) he "was subjected to verbal or physical conduct because of [his] race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt*, 339 F.3d at 798 (cleaned up). The Ninth Circuit recognizes that a "hostile work environment may be the basis for a retaliation claim under Title VII" since "[h]arassment . . . is the paradigm of 'adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Ray v. Henderson*, 217 F.3d 1234, 1244-45 (9th Cir. 2000) (quoting EEOC Compliance Manual ¶ 8008). Under either theory, "[h]arassment is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 1245 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether an environment is sufficiently hostile, [courts] look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ray*, 217 F.3d at 1245 (quotation and citation omitted). "A hostile work environment claim relies on a series of separate acts that collectively are so severe and offensive that they alter the conditions of [a] plaintiff's employment." *Williams v. Modly*, 796 F. App'x 378, 380–81 (9th Cir. 2020).

With respect to Johnson's claim for a racially hostile work environment, the FAC alleges that Defendant's "delay in making its decision to reject [Johnson's] requests for accommodation, created a hostile work environment" because "[o]n a daily basis, [Johnson] was required to take a life-threatening risk simply by reporting to work . . . ." FAC ¶ 87. It further alleges that as of January 1, 2021, there were 17 ATMs working in his district, and that only 23% of the ATMs were African American. Thus, Johnson "was in the minority." *Id.* at ¶ 84.

As to the retaliatory hostile work environment claim, the FAC alleges that starting on June 10, 2020, Johnson sent multiple requests for an accommodation for his disability but received no response. Defendant's refusal to provide Johnson with an accommodation, which resulted in Johnson making a "daily decision" about whether to take a life-threatening risk by reporting to work, "was a continuous and pervasive form of discriminatory and retaliatory treatment" that was "sufficiently severe and pervasive to alter the conditions of" his employment and created an abusive working environment. *Id.* at ¶ 114.

Defendant moves to dismiss these claims on the grounds that the FAC does not allege that Johnson was subjected to verbal or physical conduct because of his race or in retaliation for protected activity, and that the FAC does not allege conduct that was sufficiently severe or pervasive. Mot. 7-8. Johnson does not identify any conduct, much less "severe or pervasive" conduct by Defendant based on either his race or the fact that he engaged in protected activity. Instead, he emphasizes Defendant's "delay in deciding to reject" his request for an accommodation given "the consequence it forced on" him. Opp'n 11. According to Johnson, "the gravity of the daily decision" and the risk he faced in going back to in-person work was "repetitive and pervasive" and "a continuous and pervasive form of discriminatory and retaliatory treatment." *Id.* Johnson offers no authority for his position that the denial of a requested accommodation can

9

1   create a "hostile work environment" because an employee must deal with the day-to-day
2   consequences of not being accommodated.
3       Johnson does not allege any facts supporting a reasonable inference that Defendant delayed
4   in responding to his request for an accommodation or eventually denied him an accommodation
5   because of his race. Accordingly, the FAC fails to state a claim for hostile work environment
6   based on race. As to the retaliatory hostile work environment claim, the FAC does not allege that
7   Defendant's delay in responding to his request for an accommodation or the denial itself was
8   based on his engagement in activity protected under Title VII (as opposed to the Rehabilitation
9   Act). *See Williams*, 796 F. App'x at 381 (discussing hostile work environment claim in the
10  context of the Rehabilitation Act). Accordingly, the FAC fails to state a claim for retaliatory
11  hostile work environment.

### D. Constructive Discharge

Claim three is for constructive discharge based on Johnson's disability under the Rehabilitation Act. Claim eight is for constructive discharge based on his race under Title VII.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Penn. State Police v. Suders,* 542 U.S. 129, 141 (2004)). The Ninth Circuit has described this standard as setting a high bar. *Poland*, 494 F.3d at 1184. "[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Id.* (*quoting Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). "[C]ourts which have considered the question are reluctant to predicate a finding of constructive discharge solely on the fact of employment discrimination. Instead, they look for aggravating factors, such as a continuous pattern of discriminatory treatment." *Satterwhite v. Smith*, 744 F.2d 1380, 1381-82 (9th Cir. 1984) (cleaned up).

Here, the FAC alleges that Defendant "created discriminatory and intolerable working conditions for [Johnson] based upon his disability and race." FAC ¶ 72. Johnson clarified in his opposition and at the hearing that these claims are based on Defendant's requirement that he return to in-person work and the resulting daily decision about whether to take a "life-threatening risk" by coming to the workplace. Opp'n 13. *See* FAC ¶¶ 76, 77, 119, 122, 123. The FAC alleges that "[b]eing required to make a life-or-death decision everyday just to report to work was so intolerable that any reasonable person in [his] position would have felt the same and felt compelled to resign and effectuate a constructive discharge." FAC ¶¶ 76, 122. As discussed above, Johnson has not stated a hostile work environment claim under any theory. "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge . . . " *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). The sole basis for Johnson's constructive discharge claim is the denial of his request for accommodation in the form of remote work. The FAC alleges no "aggravating factors" accompanying that denial. *Compare Johns v. Brennan*, 761 F. App'x 742, 745-46 (9th Cir. 2019) (reversing grant of summary judgment on constructive discharge claim based on disability discrimination and failure to engage in interactive process under the Rehabilitation Act; plaintiff presented evidence that agency asked plaintiff to resign rather than grant FMLA leave; denied FMLA leave before plaintiff had even submitted an application for the same; terminated plaintiff for being unavailable to work following car accident, and following reinstatement and subsequent injury, failed to respond to plaintiff for five months after she began inquiring about returning to work with a reasonable accommodation, among other actions). At the hearing, Plaintiff's counsel was unable to identify any authority supporting a constructive discharge claim based solely on the denial of a requested accommodation. Accordingly, Johnson's constructive discharge claims are dismissed.[3]

---

[3] At the hearing, Plaintiff's counsel acknowledged that if the court dismisses the constructive discharge claim, Plaintiff will be unable to recover the remedy of backpay in connection with his Rehabilitation Act claim for failure to accommodate. *See, e.g., Satterwhite*, 744 F.2d at 1381 n.1 ("An employee who quits cannot secure backpay unless his employer constructively discharged him.").

### E. Race Discrimination

Claim five is for race discrimination based on disparate treatment in violation of Title VII. Claim six is for race discrimination in violation of Title VII.

To state a claim for employment discrimination based on race, a plaintiff must allege that (1) they are a member of a protected class, (2) they were performing their job in a satisfactory manner, (3) they suffered an adverse employment action, and (4) they were treated differently than similarly situated persons outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The FAC alleges that Defendant discriminated against Johnson "by forcing his resignation on the basis of his race." FAC ¶ 94. It also alleges that Johnson's race "was the determining factor and/or motivating factor in Defendant's adverse employment action[s]," including requiring Johnson to return to work during the pandemic "while other employees in 'mission critical' positions, including controllers, were allowed to telework," and denying Johnson's request for Weather and Safety Leave as a form of accommodation. *Id*. at ¶¶ 102, 103.

Defendant moves to dismiss these claims because the FAC does not plead that any similarly situated individual outside of Johnson's protected class was treated more favorably than Johnson. Mot. 10. Specifically, the FAC alleges that unspecified "other employees" were permitted to telework and/or take Weather and Safety Leave but does not allege the race of those individuals or that they were similarly situated to Johnson. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("individuals are similarly situated when they have similar jobs and display similar conduct.").

In response, Johnson notes the FAC's allegations that he was an ATM and held a "mission critical" position, and that "there were more ATMs that were of a different race than there were African-Americans like" Johnson. Opp'n 14 (citing FAC ¶¶ 15, 22). He further notes that other individuals in mission critical positions and individuals categorized as "high-risk individuals" were treated more favorably than he because they were allowed to continue working remotely. *Id*. (citing FAC ¶ 35). However, the FAC does not allege the race of any such individuals or the positions they held, facts from which the court could potentially infer that they are similarly

1 situated persons who are outside of Johnson's protected class. Indeed, the FAC does not identify a single non-African-American comparator who was treated more favorably and permitted to work remotely full-time. Accordingly, it does not state claims for race discrimination.

\* \* \* \* \*

Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent" reason, such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

Johnson requests leave to amend the FAC if the court concludes that any of his claims are deficient. Opp'n 2, 14-15. The court has already given him one opportunity to amend. Despite the court's instruction to "plead his best case," the FAC does not adequately plead any claims other than the failure to accommodate claim under the Rehabilitation Act. At the hearing, Johnson's counsel could not identify any additional facts that he could plead to support Johnson's deficient claims. Accordingly, the court dismisses all of the claims in the FAC with prejudice, except the failure to accommodate claim.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the FAC is granted. The sole remaining claim is Johnson's failure to accommodate claim under the Rehabilitation Act.

**IT IS SO ORDERED.**

Dated: December 9, 2022



Donna M. Ryu
United States Magistrate Judge

13